### S98A0240. ATLANTA-EAST, INC. v. LAIRD et al.
(501 SE2d 202)

SEARS, Justice.

This appeal is brought from the trial court's grant of summary judgment in favor of the appellees Laird and Scott (collectively "Laird") and against the appellant Atlanta-East, Inc. The underlying dispute concerns Atlanta-East's suit seeking a declaratory judgment that it holds title to an undivided one-fourth interest in a 160-acre parcel of property located in Gilmer County ("the Property"). Atlanta-East claims its interest in the Property is established by a chain of title going back more than 50 years.[1] Laird disputes that contention, and argues that the chain of title establishes that he owns full fee simple title in the entire Property. We conclude that the chain of title, while not a model of clarity, supports the trial court's conclusion that Laird's title to the Property is superior to Atlanta-East's. Therefore, we affirm.

The following undisputed facts are evident from the parties' respective summary judgment motions: In 1917, an undivided one-fourth interest in the Property was deeded to McCorkle, a former governor of West Virginia. When he died in 1930, McCorkle devised his interest in the Property to his daughter-in-law, Margaret McCorkle. In 1942, Margaret McCorkle deeded her undivided one-fourth interest in the Property, together with other property, by deed of trust to the Charleston National Bank, as Trustee ("the Bank"). The deed stated that Ms. McCorkle owned certain real estate jointly with Porter, whose estate was being administered by the Bank, and that such real estate could be more advantageously "handled, sold or leased . . . as a whole." Ms. McCorkle's deed of trust specifically provided that all future purchasers of the Property would be protected in their dealings with the Bank as trustee, "as if the [Bank] were the sole and absolute owner of [Margaret McCorkle's] interest in [the Property] in fee simple." When Margaret McCorkle died in 1958, she devised all of her real property to her son, Sam McCorkle. However, at that time, any interest that she formerly had in the Property remained vested in the Bank as trustee under the 1942 deed.

In April 1983, the Bank, acting as the trustee of the Porter

---

[1] Atlanta-East does not base its claim on prescription. In fact, it contends that there is no evidence of possession of the Property by anyone.

estate, deeded the Property to the Burnt Mountain Company. The deed purports to convey not just an undivided one-fourth interest, but full title to the 160 acres. In June 1983, the Burnt Mountain Company deeded the entire 160 acres in fee simple to Laird. That deed was recorded in Gilmer and Pickens Counties in July 1983. Since 1983, Laird has conveyed the Property as security for a loan, paid the resulting indebtedness, paid all taxes due on the Property, surveyed the Property, and divided it into lots.

In June 1991, the Bank, acting as trustee of the McCorkle trust, executed a deed to John and Gwendolyn McCorkle, Sam McCorkle's heirs, that purported to convey an undivided one-fourth interest in the Property to John and Gwendolyn. In August 1991, John and Gwendolyn deeded their purported undivided one-fourth interest in the Property to appellant Atlanta-East, Inc. In April 1996, Atlanta-East filed the underlying action seeking a judgment declaring that it owns an undivided one-fourth interest in the Property, descending in a chain of title under the 1942 McCorkle deed to the Bank. On cross-motions for summary judgment, the trial court ruled that Laird owns the Property in its entirety, free from any claims of Atlanta-East. Atlanta-East then filed this appeal.

In construing a trust instrument, it is a court's duty to determine the settlor's intention and to effectuate it insofar as the language used in the trust instrument and the rules of law will permit.[2] Trusts generally are executory in nature, and unless otherwise provided, a trust's corpus shall remain with its trustee so long as the trustee has powers or duties with regard to the corpus, and so long as the trust continues to serve a material purpose of the settlor.[3]

Bearing these principles in mind, we look to the following terms from Margaret McCorkle's deed of trust instrument, created by her in 1942:

> Whereas [McCorkle] and the Estate of . . . Porter are the owners of certain real estate hereinafter described, situated in Gordon, Gilmer and Pickens Counties, Georgia, and . . . the [Bank] is one of the administrators of the Estate of . . . Porter, and . . . is handling and endeavoring to sell or lease the undivided interest of said Estate in and to said real estate, and it is believed that said property can be handled, sold or leased more advantageously as a whole . . . [McCorkle] doth grant, bargain, sell, release, and forever quitclaim unto the [Bank], all of the right, title, interest, claim or demand [she has] in all real estate situate [sic] in Gordon,

---

[2] *Thomas v. Trust Co. Bank*, 247 Ga. 693 (279 SE2d 440) (1981).
[3] OCGA § 53-12-26.

Pickens, and Gilmer Counties, Georgia. . . . Said lands
shall include [the Property]. . . . To have and to hold . . . in
trust . . . with the following powers, rights, duties, and obli-
gations . . . (4) to make sale and conveyance of [the Prop-
erty] or any part thereof. . . .

\* \* \* \*

It is expressly provided that there shall be no duty or
responsibility on the part of any purchaser . . . [of the Prop-
erty] to make inquiry as to the nature of the trust under
which it is held by the [Bank], and . . . any purchaser . . .
shall be protected in dealing with [the Bank] in all respects
as if the . . . Bank, as Trustee, were the sole and absolute
owner of [McCorkle's] interest in said real estate in fee
simple.[4]

From this language, it is clear that Margaret McCorkle's intent
in creating the 1942 deed of trust was to vest the Bank as trustee
with absolute title to her one-fourth interest in the Property, and to
authorize the Bank to sell that one-fourth interest. As recognized in
the deed of trust, the Bank already was handling the disposition of
property held by the Porter estate. By the plain terms of her deed of
trust, it is obvious that Ms. McCorkle intended that some of her prop-
erty holdings, including her undivided one-fourth interest in the
Property, could best be sold together with property held by the Porter
estate.

While there is some discrepancy on this issue, evidence of record
states that the remaining undivided three-fourths interest in the
Property was held by the Bank as trustee of the Porter estate. The
June 1991 deed from the Bank to John and Gwendolyn McCorkle
states that Margaret McCorkle's conveyance to the Bank of her inter-
est in the Property was "made as a convenience to the Estate of . . .
Porter, which owned the remaining 3/4ths undivided interest" in the
Property.[5] That the Bank as trustee of the Porter estate exercised
some control over the remaining undivided three-fourths interest in
the Property also can be inferred from the plain terms of Margaret

---

[4] The deed also instructed that any profits realized from the sale or lease of the Prop-
erty were to be paid to Porter's Estate, to a third party, L. H. Oakes (who created the Trust
along with Margaret McCorkle), and to the Bank in payment for its services as Trustee. On
appeal, it is not claimed that the Bank profited improperly from the sale of the Property.

[5] On appeal, Atlanta-East (John and Gwendolyn McCorkle's purported successor
in title) points out the discrepancies in the chain of title regarding this undivided three-
fourths interest. However, Atlanta-East's claim of title is unrelated to that three-fourths
interest. Rather, its claim rests solely on whether the Bank's 1983 deed to Burnt Mountain
conveyed the undivided one-fourth interest that had been conveyed to the Bank by Margaret
McCorkle.

McCorkle's 1942 deed, and also is essentially conceded by Atlanta-East in its brief to this Court. Thus, it can be concluded from the record that, by deeding her interest in the Property to the Bank in trust, Margaret McCorkle intended that the Bank as trustee be granted authority to "make sale and conveyance of" the entire Property.

It also is clear from the 1942 deed that Margaret McCorkle intended to shield purchasers of her undivided one-fourth interest in the Property from claims that the Bank was without authority to sell that interest. Insofar as such allegations might be raised, Ms. McCorkle intended that the Bank be considered the sole and absolute owner of her interest in the Property. That power and authority was intact when, in 1983, the Bank deeded the Property to the Burnt Mountain Company, clearing the way for Burnt Mountain to deed the Property to Laird.

Having conveyed all of the interest it held in the Property under the 1942 McCorkle deed of trust to Burnt Mountain in 1983, the Bank no longer held any title that could be conveyed in 1991.[6] Therefore, Atlanta-East's claim based upon record title must fail, and summary judgment was granted properly in favor of Laird.

For the reasons discussed above, we conclude that, in granting summary judgment to Laird, the trial court did not err in construing Margaret McCorkle's 1942 deed of trust according to its plain meaning and consistent with her intent as expressed therein. Nor did the trial court err in concluding that Laird's title to the disputed undivided one-fourth interest was established by the Property's chain of title.

*Judgment affirmed. All the Justices concur, except Hunstein and Carley, JJ., who dissent.*

CARLEY, Justice, dissenting.

In my opinion, the majority fails to apply controlling precedent which distinguishes between the authority of the Bank to convey an interest in property and the Bank's actual conveyance of an interest pursuant to the exercise of its authority. The 1942 deed of trust clearly authorized the Bank to sell the one-fourth interest in the property which it received as trustee *of the McCorkle estate*. However, in executing the 1983 deed, the Bank acted only in its capacity as trustee *of the Porter estate*. Thus, the Bank did not purport to convey the undivided one-fourth interest which it held as a trustee pursuant to the 1942 McCorkle deed of trust. Therefore, I dissent to the

---

[6] The other land described in the 1991 deed to John and Gwendolyn McCorkle is not at issue in this action, and hence we do not reach the issue of whether that deed conveyed good title to the other property described therein.

affirmance of the trial court's grant of summary judgment in favor of Laird.

A trust is a legal entity which is separate from all other legal entities. *Henderson v. Collins*, 245 Ga. 776, 780-781 (5) (267 SE2d 202) (1980). Thus, it "is ordinarily the duty of the trustee not to mingle property held upon one trust with property held upon another trust. . . ." Restatement (Second) of Trusts, § 179, comment c. See also Bogert, Trusts & Trustees, § 596 (3), p. 463 (2d ed. rev. 1980). As a consequence of the separate legal status of trusts, a deed transferring title to trust property "should be executed by the trustee, as trustee." Bogert, supra at § 745, p. 486 (2d ed. rev. 1982). The failure of a trustee to execute a deed in that capacity or to refer to the trust in the deed will not vitiate the purported execution of a general power of sale, if the trustee has no individual interest and no other representative capacity. *Terry v. Rodahan*, 79 Ga. 278 (1) (5 SE 38) (1888). However, the rule is otherwise where the trustee occupies more than one representative capacity with respect to the same property:

> A deed wherein the maker is described as trustee for his wife only, and whereby he undertakes, as such trustee, to convey land, and which does not, as explanatory of his purpose or intention, refer to any other instrument, can not by construction be given the effect of executing a power of sale conferred upon him as trustee for his wife and children by a former deed from another to himself.

*Clarke v. East Atlanta Land Co.*, 113 Ga. 21, 22 (6) (38 SE 323) (1901). In *Clarke*, "[t]he maker signed the deed as trustee for his wife; and it was held that he did not even pretend to convey the interest of the children, which did not pass under his deed." *Mahoney v. Manning*, 133 Ga. 784, 787 (66 SE 1082) (1910). Thus, where, as here, the trustee holds two different property interests in two different representative capacities, a deed which was executed by the trustee in only one of those representative capacities does not convey the title held in the other representative capacity, and the grantee acquires the interest of the one trust only. Such a deed is not ambiguous and cannot be construed to show that the trustee acted in the undisclosed capacity. *Clarke v. East Atlanta Land Co.*, supra at 30 (6). This Court has drawn an analogy between cases relating to sales of real estate by trustees and cases which deal with powers of appointment. *Terry v. Rodahan*, supra at 283-284 (1). If a person "has several powers, and refers to some and not to others, the execution will exclude those not referred to." *Terry v. Rodahan*, supra at 286 (1). Similarly, if a person has both an individual interest and a power of

appointment with respect to the same property, a conveyance without express or implied reference to the power attaches only to the individual interest. *Lewis v. Tennille Banking Co.*, 230 Ga. 529, 530 (198 SE2d 172) (1973). See also *May v. C&S Bank*, 223 Ga. 614, 615 (1) (157 SE2d 279) (1967); *C&S Nat. Bank v. Kelly*, 223 Ga. 294 (154 SE2d 584) (1967); *New England Mtg. Security Co. v. Buice*, 98 Ga. 795, 796 (2), 800 (26 SE 84) (1896).

The majority opinion relies on the clause in the 1942 deed of trust which shields purchasers of the McCorkle undivided one-fourth interest from claims that the Bank was without authority to sell that interest. However, that clause only relieves a purchaser from the Bank of the duty to inquire as to the Bank's actual authority to sign a deed on behalf of the McCorkle trust. See *Penta v. Concord Auto Auction*, 511 NE2d 642, 646 (1) (Mass. App. 1987); *Eisel v. Miller*, 84 F2d 174, 178 (8th Cir. 1936). It does not automatically convey the one-fourth interest of the McCorkle estate whenever the Bank conveys any other interest it might hold in the property. In *Clarke*, supra at 23, the deed of trust explicitly granted the trustee full authority to convey the property, but that grant of authority did not automatically cause the conveyance in one representative capacity to result in a conveyance of the interest held in another separate representative capacity. If the majority is correct, then the Bank could not convey an interest that it holds in only one of its representative capacities without expressly excluding all additional interests that it holds in its other representative capacity. Such a holding is inconsistent with settled Georgia precedent. The majority also states that Ms. McCorkle intended that the Bank, as trustee, be considered the sole and absolute owner of her interest. However, Ms. McCorkle's intent is irrelevant. The dispositive intent is that of the Bank in executing the 1983 deed. The only intent revealed in that deed is the Bank's intent to act in its capacity as trustee of the Porter estate. Furthermore, the fact that there are no restraints on the Bank's sole and absolute authority to convey the one-fourth McCorkle interest in its representative capacity does not resolve the issue of whether the Bank actually exercised that authority.

Accordingly, I believe that the Bank did not convey the McCorkle undivided one-fourth interest by the 1983 deed, but rather it conveyed only that interest which it held in its capacity as trustee of the Porter trust. Therefore, I. dissent.

I am authorized to state that Justice Hunstein joins in this dissent.

DECIDED JUNE 1, 1998 —
RECONSIDERATION DENIED JULY 31, 1998.

*Clifford S. Lancey,* for appellant.
*Landrum & Landrum, Phillip M. Landrum, Jr., Susan Landrum,* for appellees.